**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARIA SALDAÑA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.:  19-cv-6178 |
| v. | ) | |
| | ) | |
| COOK COUNTY HEALTH & HOSPITALS | ) | |
| SYSTEMS, | ) | **Plaintiffs Demand Trial by Jury** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff MARIA SALDAÑA, by her attorneys, Jennifer M. Sender and Andrés J. Gallegos of Robbins, Salomon & Patt, Ltd., for her Complaint against Defendant Cook County Health & Hospitals System ("CCHHS," or the "Defendant"), states as follows:

### JURISDICTION AND VENUE

1.      This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as Plaintiff's claims alleged herein arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–12189; Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 794, *et seq*.; and Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 U.S.C. § 18116. Declaratory relief is authorized by 28 U.S.C. §§ 2201(a) and 2202 and Rule 57 of the Federal Rules of Civil Procedure. Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure.

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). All of the events or omissions giving rise to Plaintiff's claims occurred in this district.

**THE PARTIES**

3.      Plaintiff Maria Saldaña ("Maria"), is a 45-year old female, and is profoundly deaf. She was raised in Mexico where she attended school up to the 8th Grade. Maria's primary and predominant means of communication is through American Sign Language ("ASL"), and she requires the assistance of a certified deaf interpreter ("CDI"),[1] for complex and lengthy conversations.  She cannot read or write in English and she cannot lip read. She is a person with a disability within the meaning of all applicable statutes. Maria resides in Melrose Park, Illinois.

4.      Defendant Cook County Health & Hospitals System is one of the largest public health care systems in the United States, providing a range of health care services regardless of a patient's ability to pay. CCHHS serves approximately 300,000 patients annually through more than one million outpatient visits and 20,000 inpatient hospital admissions. CCHHS operates, *inter alia*, John H. Stroger, Jr. Hospital of Cook County ("Stroger Hospital"), a 450-bed tertiary, acute care hospital. Stroger Hospital holds a certification in oncological care.

**DEFENDANT'S CONDUCT**

5.      The deaf community struggles with significant health disparities and is often excluded from health surveillances, outreach programs and mass media healthcare messages. Deaf users of signed languages, through cultural and language barriers, are at high risk for poor health knowledge and inequitable access to medical care in our health system. These barriers directly translate to inadequate assessment, limited access to treatment, insufficient follow-up

---

[1] A CDI is deaf or hard of hearing sign language interpreter who has demonstrated knowledge and understanding of interpreting, deafness, the Deaf community, and Deaf culture. A CDI interprets between the ASL interpreter and the deaf or hard of hearing individual by utilizing gesture, mime, props, drawings and other tools to enhance communication. *See* Registry of Interpreters for the Deaf, https://rid.org/rid-certification-overview/available-certification/cdi-certification/

and poorer outcomes. For example, as compared with the hearing population, for the deaf population there are lower rates of individuals accessing preventative services, worse cardiovascular health outcomes and higher rates of diabetes and obesity.[2] Signed languages are the primary languages for many people who are deaf; however, interpreters are often not provided during medical visits, even when such medical visits are not for themselves, but for their minor children, as is the case here.

6. "Effective communication" is critical in virtually all medical contexts. Without it, a caregiver cannot obtain complete medical histories; assess symptoms; provide for patient rights, including informed consent; develop accurate diagnoses and prognoses; develop, explain and administer procedures, medication and treatment generally; provide counseling; or otherwise ensure that residents' needs are appropriately met. Failure to ensure that deaf and hard of hearing patients can effectively communicate threatens the quality of care and, even when treatment ultimately is successful, violates legally protected rights. Moreover, depriving residents and companions such as Plaintiffs of the means to communicate can cause needless stress, fear and worry. In enacting the Americans with Disabilities Act, Congress found that individuals with disabilities continually encounter discrimination in critical areas such as health services, including, *inter alia*, outright intentional exclusion, communication barriers, and the failure to make modifications to existing practices. 42 U.S.C. § 12101(a)(3), (a)(5).

7. CCHHS acted intentionally and with deliberate indifference when it failed to provide Plaintiff with auxiliary aids and services to allow her to effectively communicate with Stroger Hospital's medical and nursing staff during numerous vital encounters in connection with Plaintiff's emergency room visits, her admission to Stroger Hospital, and her visit to the

---

[2] *See* Schoenborn, M.P.H., et al., Health Disparities Among Adults with Hearing Loss: United States, 2000 – 2006, Center for Disease Control and Prevention, Health E-Stats. Available at: http://www.cdc.gov/nchs/data/hestat/hearing00-06/hearing00-06.htm

oncology department in October 2017. That failure did not allow her to participate in her own care. By failing to provide auxiliary aids and services to the Plaintiff, CCHHS jeopardized Plaintiff's health and well-being.

8.     CCHHS is a Medicare and Medicaid provider. Medicare, and a portion of Medicaid, is funded through the Department of Health and Human Services' (the "Department") Centers for Medicare & Medicaid Services.   For the fiscal year ending 2017, approximately 63% of Stroger Hospital's inpatient patients were Medicaid and Medicare recipients, and approximately 52% of all outpatient patients were Medicaid and Medicare recipients.[3]

## PLAINTIFF'S EXPERIENCE

9.     On October 13, 2017, Plaintiff presented with her deaf cousin to Stroger Hospital's emergency room for symptoms including significant pain in her left breast getting progressively worse over the past few months and radiating down her left arm and across the left side of her chest, weakness, dizziness, fatigue and weight loss (50 – 60 pounds loss over the few months despite normal appetite and eating patterns). A mammogram, taken at a different hospital two months prior for similar complaints, was abnormal.

10.     Upon arrival Stroger Hospital's emergency room, Plaintiff showed a card to the emergency room staff which indicated that she was deaf and requested an on-site sign language interpreter. The emergency room staff brought video remote interpreting ("VRI") equipment instead. The equipment was not effective, because the transmission kept freezing. Plaintiff and her cousin complained about the equipment and again requested the services of an on-site

---

[3] Illinois Hospital Report Card and Consumer Guide to Healthcare, Illinois Department of Public Health. Available at: http://www.healthcarereportcard.illinois.gov/hospitals/view/101216 (47.1% and 15.8% of Stroger Hospital's inpatients were Medicaid and Medicare recipients, respectively; and 36.48% and 15.8% of Stroger Hospital's outpatients were Medicaid and Medicare recipients, respectively).

4

interpreter, but Defendant did not provide one. As Plaintiff does not read or write English at all, she had no other means by which to communicate effectively.

11. Plaintiff was subsequently admitted as an inpatient for pain management. According to her medical records, Defendant's doctors believed cancer was the most likely diagnosis. She remained there until she was discharged on October 16, 2017. During her hospitalization, despite requests for an on-site sign language interpreter, VRI was provided on an intermittent basis and doctors and nurses would occasionally write notes to Plaintiff. The VRI was not effective for communication, because either the transmission froze, or Plaintiff had difficulty understanding the interpreter. Written notes were totally ineffective as Plaintiff cannot read English.

12. At the discharge meeting, Defendant did not provide an on-site sign language interpreter or VRI. Plaintiff could not understand the discharge summary, discharge plan or instructions. She left the Hospital without knowing the reason for her hospitalization and her diagnosis.

13. After discharge, because she did not understand the instructions, Plaintiff sought assistance from a deaf advocate from a local center for independent living. The deaf advocate, who herself is deaf, reviewed the discharge instructions and explained to Plaintiff that she was scheduled for a follow up consultation with the oncology department at Stroger Hospital on October 31, 2017.

14. On October 31, 2017, Plaintiff presented to the oncology department with the deaf advocate. Upon arrival to the oncology department the deaf advocate, in writing, informed the receptionist that they were both deaf and required an ASL interpreter and a CDI. Instead,

5

Defendant provided VRI. The VRI equipment was ineffective as the transmission would only intermittently function, it would frequently freeze or pixilate, and when it did work the physician did not know how to properly utilize the equipment. When the interpreter could be seen on the screen, the physician would constantly turn the screen away from Plaintiff and the deaf advocate and towards him to communicate with the on-screen interpreter. The deaf advocate would repeatedly turn the screen back to face the Plaintiff and her only for the physician to turn it back to himself. During that examination, Plaintiff suffered a seizure and was transferred to the Hospital's emergency room. Upon arrival, Plaintiff's deaf advocate, in writing, informed the emergency room staff that they were both deaf and requested an on-site interpreter, as well as a CDI. Instead, Defendant provided VRI equipment. Again, the equipment was ineffective, because the transmission kept freezing or, in the instances where it did transmit, Plaintiff could not understand the interpreter. As a result, her medical records demonstrate that Defendant's doctors and staff could not obtain various symptoms due to language barrier.

15.     Per the medical records, one doctor questioned whether Plaintiff had developmental or other disability because of the communication difficulties. Further, the neurologist noted that a complete medical history could not be obtained due to the difficulties with the remote interpreting.

16.     Plaintiff continues to experience the same symptoms which led her to seek treatment at the Hospital on October 2017. She has been reluctant to return to the Hospital because of its indifference to her communication needs. Nevertheless, she has an appointment at the Defendant's Professional Building with one of Defendant's oncologists on September 10, 2019.

## COUNT I
### Violation of the Americans with Disabilities Act, 42 U.S.C. § 12131

1-16.    Plaintiff incorporates by reference paragraphs 1 through 16.

17.    Plaintiff's claims in Count I arise under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 – 12189 (the "ADA"), and its implementing regulation under Title II, 28 C.F.R. Part 35. Title II and its implementing regulation prohibit state and local government health and human service agencies (covered entities) from discrimination against qualified individuals with disabilities by excluding such individuals from participation in or denying them the benefits of the services, programs, or activities of a public entity, or subjecting them to discrimination by any public entity. To comply with the non-discrimination mandate of Title II, a public entity must take steps to ensure that communications with individuals with disabilities are as effective as communications with others and shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities an equal opportunity to that entity's services, program, and activities. *See* 28 C.F.R. § 35.160(a).

18.    Pursuant to the statutory directive in 42 U.S.C. § 12186(b), the U.S. Department of Justice has promulgated regulations to implement Title II's broad nondiscrimination mandate with respect to covered entities. One of these regulations, titled "Auxiliary aids and services," specifies that "[a] public entity shall furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities, including applicants, participants, companions, and members of the public, and equal opportunity to participate in, and enjoy the benefits of, a service, program or activity of a public entity." 28 C.F.R. § 35.160(b)(1). The type of auxiliary aid and service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual as well as the nature, length and

complexity of the communication involved and the context in which a communication is taken place. However, in determining what types of auxiliary aids and services are necessary, a public entity "shall give *primary consideration* to the request of individuals with disabilities." *Id*. at § 35.160(b)(2).

19.     The acts and omissions of Defendant violated and continue to violate the ADA and its implementing regulations in one or more or all of the following manners, as Defendant has discriminated against Plaintiff by:

A.     Denying her the opportunity for the full and equal enjoyment of Defendant's services, programs and activities.

B.     Denying her the opportunity to participate in or benefit from Defendant's services, programs and activities. .

C.     Offering or affording her services that are not equal to those services afforded to other individuals who are not deaf.

D.     Failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford Defendant's services, programs and activities to Plaintiff.

E.     Intentionally failing to provide Plaintiff with appropriate auxiliary aids and services to achieve effective communications and to participate in her own healthcare.

F.     Otherwise having discriminated against the plaintiff because of her disability.

20.     As a proximate result of Defendant's violations of the ADA, CCHHS has inflicted injury and damages upon the Plaintiff, including loss of a civil right, mental anguish, humiliation, and mental pain and suffering.

21.     Defendant's conduct constitutes ongoing and continuing violations of the ADA. Unless restrained from doing so, defendant CCHHS will continue to violate the ADA. This conduct, unless enjoined, will continue to inflict injuries on Plaintiff, for which she has no

adequate remedy at law. Therefore, pursuant to section 308 of the ADA (42 U.S.C. § 12188),

Plaintiff is entitled to injunctive relief.

22.     Plaintiff is entitled to reasonable attorney's fees and costs, pursuant to 42 U.S.C. §

12205.

WHEREFORE, Plaintiff prays for the following relief:

A.     An order enjoining Defendant from discriminating against Plaintiff, requiring Defendant to (i) adopt and implement a legally compliant communication access policy; (ii) make available to Plaintiff an array of auxiliary aids and services; and (iii) provide its appropriate employees training on its communication access policy, the proper utilization of auxiliary aids and services and interacting with persons who are deaf;

B.     An award of attorneys' fees and costs; and

C.     Such other relief as the Court deems just.

## COUNT II
### Violation of the Rehabilitation Act of 1973, 29 U.S.C. § 704

1-16.     Plaintiff incorporates by reference paragraphs 1 through 16 from the above.

17.     At all relevant times herein, Defendant received federal financial assistance in the

form of reimbursement from the federal Medicare and Medicaid programs and is therefore

subject to the anti-discrimination provisions of the Rehabilitation Act, as herein described.

18.     At all times relevant herein, there was in full force and effect a statute known as

the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et sequitur*, and its implementing regulations, 45

C.F.R. § 84.4(a). The Section 504 implementing regulation provides that "[n]o qualified

handicapped person shall, on the basis of handicap be excluded from participation in, be denied

the benefits of or otherwise be subjected to discrimination under any program or activity which

receives or benefits from Federal financial assistance." 45 C.F.R. § 84.4(a).

A.  The regulation further provides:

> "A recipient, in providing any aid, benefit, or service, may not, ... on the basis of handicap: (ii) Afford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit or service that is not equal to that afforded others ..."

> 45 C.F.R. § 84.4(b)(1) (ii).

B.  Elsewhere, the Section 504 regulation states:

> "In providing health, welfare or other social services or benefits, a recipient may not on the basis of handicap: … (2) Afford a qualified handicapped person an opportunity to receive benefits or services that is not equal to that offered non-handicapped persons.

> 45  C.F.R. § 84.52(a)(2).

C.   In addition, "[a] recipient hospital that provides health services or benefits shall establish a procedure for effective communication with persons with impaired hearing for the purpose of providing emergency health care." 45 C.F.R.  § 84.52(c).

D.  The regulation further provides:

> "A recipient to which the subject applies that employs 15 or more persons shall provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question."

> 45 C.F.R. § 84.52(d)(l).

E.  The regulation provides that such "auxiliary aids may include interpreters… and other aids for persons with impaired hearing… 45 C.F.R. § 84.52(d)(3).

F.  The Section 504 regulation defines a person who has a disability as any person who:

> "(i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment."

> 45 C.F.R. § 84.3(j)(l)(i)-(iii).

10

G.   A qualified person with a disability, with respect to the provision of health, welfare and social services, is a person "who meets the essential eligibility requirements for the receipt of such services." 45 C.F.R. § 84.3(k)(4).

19.     Through the acts and omissions alleged herein, CCHHS has, solely on the basis of Plaintiff's disability, excluded Plaintiff from participating in its services, denied Plaintiff the benefit of its services, denied Plaintiff the opportunity to participate in her own healthcare, and subjected Plaintiff to discrimination in violation of 29 U.S.C. § 794. *et seq*., and the regulations promulgated thereunder, and have resulted in injury to Plaintiff.

20.     Knowing that Plaintiff requested and required an ASLinterpreter and a CDI to achieve effective communication with doctors and staff, CCHHS's acts and omissions alleged herein violated the Rehabilitation Act and its implementing regulations in one or more or all of the following manners:

A.   Defendant intentionally and deliberately discriminated against Plaintiff by denying her the opportunity for the full and equal enjoyment of its programs, services and activities.

B.   Defendant intentionally and deliberately discriminated against Plaintiff by denying her the opportunity to participate in or benefit from its programs, services and activities. .

C.   Defendant intentionally and deliberately discriminated against Plaintiff by offering or affording her services that are not equal to those services afforded to other individuals without hearing impairments.

D.   Defendant intentionally and deliberately discriminated against Plaintiff by failing to make reasonable modifications in policies, practices, or procedures.

E.   Defendant intentionally and deliberately discriminated against Plaintiff by failing to establish a procedure for effective communication with Plaintiff for the purpose of providing health care.

F.   Defendant intentionally discriminated against Plaintiff by deliberately

failing to provide Plaintiff with appropriate auxiliary aids and services, such as an on-site sign language interpreter or effective video remote interpreting services, despite knowing the failure to do so would likely result in harm to the Plaintiff's federally protected rights and failed to act upon that likelihood.

G.     Defendant has otherwise discriminated against Plaintiff.

21.     Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

22.     As a proximate result of Defendant's violations of Section 504, CCHHS has inflicted injury and damages upon Plaintiff, including loss of a civil right, mental anguish, humiliation, and mental pain and suffering.

23.     Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794(a), as Defendant's conduct has inflicted injury and damages upon Plaintiff, including loss of a civil right, mental anguish, and mental pain and suffering.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

A.     An order enjoining Defendant from discriminating against Plaintiff, requiring Defendant to (i) adopt and implement a legally compliant communication access policy; (ii) make available to Plaintiff an array of auxiliary aids and services; and (iii) provide its appropriate employees training on its communication access policy, the proper utilization of auxiliary aids and services and interacting with persons who are deaf;

B.     An award of compensatory monetary damages;

C.     An award of attorneys' fees and costs; and

D.     Such other relief as the Court deems just.

## COUNT III
### Violation of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116

1-16.    Plaintiff incorporates by reference paragraphs 1 through 16 from above.

17.    Since March 2010, there was in full force and effect a statute known as the Patient Protection and Affordable Care Act (the "Affordable Care Act"), 42 U.S.C. § 18001, *et seq.,* Pub.L. 111-148. Section 1557 of the Affordable Care Act prohibits discrimination on the basis of race, color, national origin, sex, age, or disability in certain health programs and activities. 42 U.S.C. § 18116. Section 1557's implementing regulations, 45 C.F.R. §§ 92.1 – 92.203, effective as of July 18, 2016, apply to health programs or activities administered by recipients of Federal financial assistance from the Department of Health and Human Services.

18.    As Defendant participates in Medicare and Medicaid funding from the Department, it is a covered entity subject to compliance with Section 1557.

19.    The implementing regulations of Section 1557 prohibit discrimination of an individual on the basis of disability, *inter alia*, and prohibit an individual from being excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination under any health program or activity. *See* 45 C.F.R. § 92.101(a)(1). Those regulations, in pertinent part, require covered entities to:

A.     Take appropriate initial and continuing steps to notify beneficiaries, enrollees, applicants and members of the public:

(1)    that the covered entity does not discriminate on the basis of race, color, national origin, sex, age, or disability in its healthcare programs or activities. 45 C.F.R. §92.8 (a)(1);

13

(2)     that the covered entity provides appropriate auxiliary aids and services, including qualified interpreters for individuals with disabilities and information in alternate formats, free of charge and in a timely manner, when such aids and services are necessary to ensure an equal opportunity to participate to individuals with disabilities. 45 C.F.R. §92.8 (a)(2);

(3)     how to obtain aids and services. 45 C.F.R. §92.8 (a)(4);

(4)     the identification of, and contact information for, the responsible employee designated to be responsible for adoption of grievance procedures. 45 C.F.R. §92.8 (a)(5);

(5)     the availability of grievance procedures and how to file a grievance pursuant to §92.7(b). 45 C.F.R. §92.8 (a)(6); and

(6)     how to file a discrimination complaint with the Department of Health and Human Services Office of Civil Rights. 45 C.F.R. §92.8 (a)(7).

B.     That a covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities, in accordance with the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

28 C.F.R. §§ 35.160 through 35.164 are the communication access standards required of public entities under Title II of the ADA. As applied to Section 1557 covered entities, the Title II regulations require them to "take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1). In addition, a covered entity "shall furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities, … companions, … an equal opportunity to participate in, and enjoy the benefits of, a service, program or activity of a [covered] entity," 28 C.F.R. § 35.160(b)(1); and "[i]n determining what types of auxiliary aids and services are necessary, a [covered] entity shall give *primary consideration* to the requests of individuals with disabilities …." 28 C.F.R. § 35.160(b)(2) (emphasis added).

14

20.     Defendant had a duty under Section 1557 to give primary consideration to Plaintiff's communication preference and provide her with an ASL interpreter and a CDI.

21.     Defendant's acts and omissions violated Section 1557 and its implementing regulations as Defendant did not take appropriate steps to ensure that communications with Plaintiff were as effective as communications with others in its healthcare services, and Defendant failed to meet what Defendant was legally required to do under Section 1557 and the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

22.     Section 1557's implementing regulations provide that the enforcement mechanisms available for and provided under Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act, *inter alia*, shall be available for purposes of Section 1557 as implemented by this part, and "compensatory damages for violations of Section 1557 are available in appropriate administrative and judicial actions brought under this rule." *See* 45 C.F.R. § 92.301.

23.     Defendant's conduct constituted violations of Section 1557.

24.     Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

25.     Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794a.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

A.     An order enjoining Defendant from discriminating against Plaintiff, requiring Defendant to (i) adopt and implement a legally compliant communication access policy; (ii) make available to Plaintiff an array of auxiliary aids and services; and (iii) provide its appropriate employees training on its communication access policy, the proper utilization of auxiliary aids and services and interacting with persons who are deaf;

B.     An award of compensatory monetary damages;

C.     An award of attorneys' fees and costs; and

D.     Such other relief as the Court deems just.

**Plaintiff Demands Trial by Jury.**

Dated:  September 16, 2019                  Maria Saldaña, Plaintiff.


                                         /s/ Jennifer M. Sender
                                         _____
                                         One of Their Attorneys

Jennifer M. Sender (ARDC No. 6207774)
Andrés J. Gallegos (ARDC No. 6212168)
Attorneys for Plaintiffs
ROBBINS, SALOMON & PATT, LTD.
180 N. LaSalle Street, Suite 3300
Chicago, Illinois 60601
(312) 782-9000 - Telephone
(312) 782-6690 - Facsimile
jsender@rsplaw.com
agallegos@rsplaw.com